HEARD APRIL TERM, 1879.

CASE No. 751.

## JOHN W. DANIELS, CLERK OF COURT FOR ANDERSON COUNTY, v. MONTGOMERY MOSES ET AL.

1. Whether the costs of a former action should be paid before a second action is allowed to proceed, must to a large extent depend upon the discretion of the Circuit judge, and would not ordinarily be the subject of appeal.

2. A second action (especially if it is for the recovery of a debt) should not be stayed until the costs of the first action are paid, where the first action was not tried upon its merits, unless the court is satisfied that the second action is vexatious.

3. A motion to stay until the costs of a former action have been paid comes too late after the second action has been called for trial.

4. The objection that plaintiff has not legal capacity to sue, or that there is a defect of parties, when appearing upon the face of the complaint, is waived, unless taken by demurrer.

5. The clerk of the Circuit Court is the proper party to bring an action on a bond payable to a former commissioner in equity of the same county, and without joining with him the parties for whose benefit the action is prosecuted.

6. Where, in an action for foreclosure, a surety on the bond, secured by the mortgage, is made a party defendant, and dies *pendente lite*, the action may proceed without making his representative a party.

7. A proceeding for the enforcement of a lien upon land in the possession of A, which demands no personal judgment against him, is not affected by a subsequent adjudication of bankruptcy against him.

8. The acknowledgment of the receipt of the purchase money contained in a deed of conveyance is not conclusive proof that it has been paid.

9. Lands lying in several districts were partitioned under one proceeding instituted in 1854 in one of those districts, separate writs of partition being issued for each district. *Held*, to be the proper practice.

10. The lien of the act of 1791 attached to intestate lands sold for partition, even if by the same proceedings other lands held under a deed of conveyance were partitioned among the same parties.

11. Taking personal security for the purchase money did not avoid the statutory lien given by the act of 1791.

12. This statutory lien is not affected by the repeal of the act of 1791 in the General Statutes, when it had attached before such repeal. *Gen. Stat., ch.* CXLVI., ? 4.

13. No length of possession, without proof of something more, will bar an

action to foreclose the lien given by statute to secure the payment of the purchase money of lands of an intestate sold for partition.

14. The vendee of the purchaser of such lands, and those claiming under him, are not protected by want of express notice of the lien.

15. Judgment may be given for the penalty of a bond when the principal sum due, with accrued interest, exceeds that amount, although the penalty is more than double the amount intended to be secured thereby.

Before PRESSLEY, J., at Sumter, May, 1878.

This was an action instituted in Sumter county by John W. Daniels, clerk of the court of Anderson county, against M. Moses, F. J. Moses, Henry Ryttenberg, Marcus G. Ryttenberg and Joseph Ryttenberg. The facts are fully stated in the opinion of the court.

The defendants appealed.*

*Messrs. Moise & Lee,* for appellants.

If no perfect title passed to M. Moses, then he held adversely to the world from time the last installment fell due. *Rice Eq.* 373. And the statute giving the lien was repealed before action brought. *Gen. Stat.* 801; 6 *Otto* 595; 2 *Story Eq.,* § 1520. The deed admitted the receipt of the purchase money: that should protect an innocent purchaser without notice. 2 *Bail.* 101; 3 *S. C.* 105. There were no records in Sumter county to give notice. Proceedings for partition must be had in the district where the lands lay. 5 *Stat.* 164; 1 *N. & McC.* 253. None but parties to that cause were bound by the decree. 1 *Bail. Eq.* 283; 2 *McC. Ch.* 125. Bond with sufficient sureties being required, rebuts the presumption that the statutory lien was con-

---

* The act of 1791, referred to in the arguments and in the opinion of the court, is entitled "An act for the abolition of the rights of primogeniture and for giving an equitable distribution of the real estates of intestates, and for other purposes therein mentioned." The seventh section provides how partition may be had of estates, real and personal, and, if sold, how sold, and concludes—"and the property so sold shall stand pledged for the payment of the purchase money." In *Compton* v. *Ulmer,* 2 *N. & McC.* 430, it was held that this section applied only to cases of intestacy—a decision which has been followed in all subsequent cases where the question arose, although not without suggestions of doubt as to the correctness of such construction.—REPORTER.

templated. If loss has happened, it has been owing to plaintiff's laches. 3 *S. C.* 530; 2 *Story Eq.*, § 1520, *and notes.*

The costs of the former action should have been paid before this action was heard. 2 *Rich.* 27; *Chev.* 217; 4 *East* 585; *Bac. Ab.,* "*Costs.*" The representative of F. J. Moses should have been a party. If a statutory lien, he had an equity of redemption; and the defendants should have had the benefit of any defences that F. J. Moses might set up against the bond. 10 *Rich. Eq.* 484.

The proceedings in *Van Wyck* v. *Maverick* were of broader scope than a partition of intestate lands; it included lands held under deed. Hence there is no lien under act of 1791. The act was not fully complied with. There should have been a separate suit in Sumter, as in cases of dower. 4 *Stat.* 742. And the evidence of M. Moses and the admissions of the deed prove payment. 10 *Rich. Eq.* 484. The bond being no part of the record, an examination of the record would not have shown the lien. In 2 *Hill Ch.* 575, and 2 *Rich Eq.* 162, the purchasers had actual notice, and proceedings were had in the county where land lay.

The bond should have been only for the credit portion of the purchase money, and the penalty in double that sum.

The policy of the law is against secret liens. 3 *S. C.* 530; 9 *Rich. Eq.* 55; *Perry on Trusts*, § 218.

*Mr. Jos. H. Earle,* for respondent.

The lien under the act of 1791 has been assimilated to a purchase money mortgage. 9 *Rich. Eq.* 53. Possession by the purchaser from mortgagor for ten years, is no bar to a foreclosure. 3 *S. C.* 25; 5 *Rich. Eq.* 81; 1 *McM. Ch.* 395; 4 *Rich. Eq.* 164. The repeal of the act of 1791 cannot affect the rights of parties accrued under it. *Dwar. on Stat.* 675, 680, 681; 1 *Hill* 183; 13 *Rich.* 277.

The admission in the deed, like any other receipt, is not conclusive. 1 *McC. Ch.* 53; 4 *Desaus.* 122; 1 *Hill Ch.* 307; 1 *Bail.* 175; 7 *S. C.* 228; 2 *Whart. on Ev.*, § 1042. The commissioner had no authority beyond the order under which he was acting. It was not necessary for proceedings to have been had in

Sumter, if writ issued to commissioners in Sumter. The judgment is conclusive. 2 *Hill Ch.* 582. No record was necessary. 9 *Rich. Eq.* 53. The lien is a better security than any that could have been taken, and, being statutory, is beyond the control of the court. 2 *Hill Ch.* 575.

There can be no question that there was a lien. 5 *Stat.* 164; 2 *Hill Ch.* 582; 4 *Rich. Eq.* 164; 3 *S. C.* 109. Which can be divested only by payment or sale under it. 2 *Rich. Eq.* 162.

There is no evidence that the offer of payment made by M. Moses was ever assented to. 1 *Wait Act. & Def.* 83. The recital of deed was sufficient to put subsequent purchasers on the inquiry. *Wade on Notice,* § 310; 2 *Hill Ch.* 646; 2 *Desaus.* 262; 16 *Ves.* 250; 9 *Ves.* 583; 1 *Story Eq.* 388; *Adams Eq.* 157–8–9; 2 *Sch. & Lef.* 315; *Amb.* 311; 2 *Ves.* 417.

The plaintiff was the proper party to bring this action. 14 *Stat.* 17; *Gen. Stat.* 571; 6 *S. C.* 121; *Dwar. on Stat.* 662. He should not be stayed until costs of an action brought by Norris are paid. 2 *Bail.* 415; 5 *Duer* 688; 3 *Abb.* 363. And it is too late to make such motion at the trial. The bond being joint and several, upon the death of F. J. Moses, plaintiff had right to discontinue as to him, and proceed against the other defendant. 22 *How. Pr.* 405; 1 *Wait Pr.* 154; *Code,* § 143. Ryttenburg's bankruptcy cannot affect the jurisdiction of the state court over the parties and subject matter before it. 39 *How. Pr.* 363; 4 *B. R.* 1; 3 *B. R.* 123; 9 *Wheat.* 531; 7 *How. U. S.* 624; 10 *Pet.* 400. His assignee had the right to come in. *Bump on Bank.* 124; 12 *Abb. Pr.* (*N. S.*) 255. The penalty of the bond is not excessive. While usually fixed at double the amount to be paid, (1 *Jacob L. Dict.* 350), it may be for more or for less.

The heirs of Maverick having surrendered their rights to the court, the court should protect them. 2 *Rich. Eq.* 171.

July 30th, 1879. The opinion of the court was delivered by

McIVER, A. J. The action in this case was brought to foreclose a statutory lien on a lot of land in the town of Sumter. For a proper understanding of the questions raised by the appeal it will be necessary to make a brief statement of the facts.

In the year 1852 one Samuel Maverick, a resident of Ander-

son district (now county), died intestate. Some time in the year 1854 a bill was filed in the Court of Equity for that district, praying for the partition of his estate, which was alleged to consist, amongst other things, of quite a number of tracts and lots of land, situate in the said district of Anderson, (which formerly constituted a part of Pendleton district,) and in several other districts in this state, including Sumter. In this bill it was stated that shortly before the filing of the bill the records of certain voluntary conveyances from said Samuel Maverick were discovered, purporting to convey quite a large number of these tracts of land—not, however, including the lot in Sumter, which is the subject matter of this controversy—to his three children, dated as far back as 1822; and while the main purpose of the bill was partition, it also asked the opinion of the court as to the validity and construction of these conveyances. Chancellor Wardlaw, who heard the cause, stated in his decree that doubts existed whether such deeds were ever delivered to the parties themselves, or to any one interested for them, but as the parties took the same shares under the deeds as they would take if the deeds were never executed, the question was of no great consequence. He therefore ordered partition of all the lands described in the bill, including the tracts mentioned in the deeds, saying that " as the said lands are situated in many of the districts of this state, it will be necessary that writs of partition should be granted for each district where the lands lie." Accordingly a separate writ of partition was issued to divide the lands in Sumter, and, upon a return to this writ recommending a sale, an order was passed for the sale of the Sumter lands on the following terms : One-fourth cash on the day of sale; the balance in three equal annual installments, to be paid in one, two and three years, with interest payable annually—" any purchaser being permitted to pay in cash, on the day of sale, more than one-fourth if desirable." Purchasers were also required to enter into bonds, with good and sufficient sureties, for the payment of the purchase money. In pursuance of this order the said lot in Sumter was sold by A. O. Norris, as commissioner in equity for Anderson district, on the 3d of March, 1856, and bid off by the defendant, M. Moses, who complied with the terms of sale by

giving bond, with F. J. Moses as surety, for the amount of his bid, which, however, was credited, at its date, with the amount required to be paid in cash, and received a deed therefor from the said commissioner, which is alleged by the defendants to contain an acknowledgment that the whole of the purchase money was then paid. On the 7th of November, 1871, the said lot of land was sold by the sheriff of Sumter county, under an execution against the defendant, M. Moses, and bought by the defendant, Joseph Ryttenberg, who subsequently conveyed the same to the defendant, Henry Ryttenberg, and the defendants, Joseph and Marcus G. Ryttenberg, are alleged to be now in possession of said lot, holding under the said Henry Ryttenberg. The plaintiff demurred to several of the defences interposed by the answer of the Ryttenbergs, and the questions raised thereby will hereafter be partially mentioned, The demurrer was sustained by the Circuit judge, by his order of March 30th, 1878, to which exception was duly taken. At a subsequent special term the case was brought on for trial, when the counsel for appellants insisted upon the following positions: 1. That all proceedings in this case should be stayed until the costs of a former action, brought on the same cause of action, were paid. 2. That the personal representatives of F. J. Moses, who had died during the progress of the cause, were necessary parties. 3. That the defendant, Henry Ryttenberg, having been adjudicated a bankrupt by the United States court on the 2d of May, 1878, the cause was necessarily suspended as to him. These positions being overruled, to which exception was duly taken, the court, after hearing the testimony and argument of counsel, rendered a decree establishing the statutory lien, rendering judgment against the defendant, M. Moses, for the sum of $1340, the amount named in the bond as the penalty, (the accruing interest having carried the amount due considerably beyond such penalty,) and directing that unless the said sum was paid by a day named the said lot of land be sold to satisfy such judgment; and if the proceeds of such sale proved insufficient for that purpose, that the plaintiff have execution against defendant, M. Moses, for the balance. To this decree various exceptions were filed, which will be noticed hereafter.

While we purpose to consider all the various questions draise

by this appeal, we do not expect to take them up exactly in the order in which they are presented in the brief. The facts upon which the motion to stay the proceedings until the costs of the former action were paid are based, are not fully or clearly presented in the brief. So far as we have been able to gather them, it would seem that an action had been previously commenced by A. O. Norris, the late commissioner in equity for Anderson district, but whether against the *same* parties, and for the *same* purpose, does not distinctly appear. To this action a demurrer was sustained (whether correctly or not it is not important now to inquire) upon the ground, as we infer from what was said in the argument here, that Norris had no right to bring the action, it being nowhere intimated that such former action was tried upon its merits, which, as it will be seen, is a very important consideration. But, looking at the question in the light most favorable for the appellants, and assuming that the former action was between the *same* parties, and sought the *same* relief as in this case, we are yet unable to perceive any error upon the part of the Circuit judge in refusing the motion. As was said in *Miller* v. *Grice*, 2 *Rich.* 36, there is no inflexible rule in this state upon the subject, and while the general rule may be that the costs of a former action should be paid before a second action should be allowed to proceed, a point, however, which we do not propose to decide, yet, after all, it is a question which, to a large extent, must depend upon the discretion of the Circuit judge, and would not, therefore, ordinarily be the subject of appeal. But we are not content to rest our decision upon this. We are entirely satisfied that so far from there being any abuse of discretion in this case, it was very properly exercised in refusing the motion. In England the rule seems to be that a motion to stay the proceedings until the costs of a former action have been paid will not be granted unless the former action has been tried on the merits, or the court is satisfied the second action is vexatious; and, where the former action has failed on some formal or technical ground only, such a motion will not be entertained, especially in an action "for the recovery of a debt." *Bass* v. *Firmen*, 1 *Ld. Raym.* 697; *Melchart* v. *Halsey*, 3 *Wills.* 149; *Pashley* v. *Poole*, 3 *Dow. & Ry.* 53; 16 *E. C. L.* 134.

In actions of ejectment the rule there is different, doubtless because one recovery in ejectment could not be pleaded in bar of a second action for the same lands. *Keene* v. *Angel,* 6 *T. R.* 740; *Doe, ex dem. Feldon,* v. *Roe,* 8 *T. R.* 645; *Doe, ex dem. Pinchard,* v. *Row,* 4 *East* 585. Possibly, too, the rule may be different in such actions as trespass, malicious prosecution, &c. *Weston* v. *Withers,* 2 *T. R.* 511; *Pashley* v. *Poole, supra.* It is very manifest, therefore, that the discretion of the Circuit judge was properly exercised in this case, which was an action " for the recovery of a debt," and which could not be regarded as vexatious merely, as the former action was not tried *upon the merits,* but failed on a purely technical ground.

Another fatal objection to the motion was that it came too late. It does not seem to have been made until the case was called for trial, not only after issue joined, but after a demurrer to portions of one of the answers had been heard and sustained, and after all the expense incident to a preparation for trial had been incurred. As is well said in *Miller* v. *Grice, supra,* at page 37, " such a motion should be made at as early a period as practicable, to prevent surprise and an unnecessary accumulation of costs."

The next question is as to the right of the plaintiff to bring this action, and the necessity for making the persons interested in the money due upon the bond parties to the action.

The objection that the plaintiff has not legal capacity to sue, or that there is a defect of parties when appearing upon the face of the complaint, as in this case, should be taken by demurrer. *Code,* § 167. And if not so taken, is deemed to be waived. *Code,* § 171. But even were the objection taken in the proper way we do not think it could be sustained. As was said in *Billings* v. *Williamson,* 6 *S. C.* 122, the plaintiff is the proper person to bring the action, and Section 136 of the code shows that it was not necessary to join the parties interested in the money to be recovered on the bond.

We do not think there was any error in refusing to require that the representatives of F. J. Moses, who had died during the pendency of the action, should be made parties. He was a mere surety on the bond, and not, therefore, a necessary party in the

first instance; and if, after his death, the plaintiff chose to proceed without making his representatives parties, he certainly had a right so to do, as the only effect would be to deprive him of the right to a judgment against such representatives. It is a mistake to suppose that F. J. Moses was one of the mortgagors, and, as such, a necessary party, and that after his death it would be necessary to bring in his personal representatives. (In that event it would be more correct to say *heirs* and representatives.) He had no connection whatever with the sale out of which the statutory lien arose; no title was made to him, and he could not in any sense be regarded as a mortgagor. It was not until *after* the sale that his connection with the matter commenced, and then he only came in as a mere surety on the bond.

Nor do we think that there was any error in refusing to suspend the cause as to Henry Ryttenberg, because he had been adjudicated a bankrupt. There can be no doubt that when this action was commenced the court below had jurisdiction of the case against Henry Ryttenberg, along with the other defendants, such adjudication not having been made until May 2d, 1878, after the action was commenced and after issue joined therein. This proceeding being merely for the enforcement of a lien, so far as the bankrupt is concerned, and not for the purpose of obtaining any personal judgment against him, cannot be affected by the proceedings in bankruptcy. *Baum* v. *Stern*, 1 *S. C.* 415; *Bump on Bank.* 292–3, (7th ed.)

The next question is, whether the bond, which is the cause of action in this case, has been paid. This, of course, is a question of fact, and while it would be quite sufficient for us to say that, in accordance with the established rule of this court, we will accept the conclusion of the Circuit judge where there is any evidence to sustain it, we may be permitted to add that we agree entirely with him in the conclusion which he has reached. It is contended, however, that the deed to M. Moses contains an acknowledgment that the whole amount of the purchase money was paid at the time of the sale. The deed itself is not before us, but the presumption is, as we understood from the statements made in the argument the fact to be, that the deed is in the usual form, and, after stating the amount of the consideration, adds the

customary words, " the receipt whereof is hereby acknowledged," or something of that kind. This, in the absence of any other evidence, might be sufficient to show that the consideration had been paid; but, certainly, under the facts proved in this case, would not warrant any such conclusion. Indeed, whatever may have been the form in which such acknowledgment may have been made, it would not be conclusive, for no rule of law is better settled than that a receipt is not conclusive. *Creditors of Rochelle* v. *Campbell,* 1 *McC. Ch.* 53; *Pinchback* v. *McCraven,* 1 *Hill Ch.* 307; *McElwee* v. *Jeffreys,* 7 *S. C.* 228. To say nothing of the other circumstances proved in the case, the testimony of M. Moses puts it beyond question that the bond was not paid at the time the deed was executed, for, if so, why should he, in 1864, propose to pay, by way of settlement, that which had been paid ever since 1856; and he does not anywhere in his testimony even pretend to intimate that the purchase money was paid at the time the deed was executed, but, on the contrary, in reply to the question whether the bond was paid, undertakes to show that it was, in a way wholly inconsistent with the idea that it was paid at the time the deed was executed.

The next question raised by the exceptions, which we propose to consider is, whether the lien provided for by the act of 1791, in case land is sold for partition, attached to the lot now in question. It is contended that in order to give rise to such lien the provisions of that act must be strictly followed, which, it is argued, was not done. First, because the proceedings for partition were instituted, not in Sumter, where the land lies, but in Anderson, and the case of *Brown* v. *McMullen,* 1 *N. & McC.* 252, is cited as authority to show that such proceedings must be instituted in the district where the land lies. In that case the proceedings were instituted in Fairfield district, while *all* of the lands sought to be partitioned were situate in other districts, and a motion to dismiss the proceedings for want of jurisdiction was granted. The court, in that case, after considering the argument drawn from the provisions of the statute in relation to proceedings for dower, which was likewise urged in this case, lays down the following terms: " It is the opinion of the court that the writs of partition can only issue in those districts where the lands

lie, and that *where there are lands in several districts, several writs must issue."* So that so far from that case being authority for the position taken by the appellants, it sustains the practice pursued by Chancellor Wardlaw in the case under which the lot in question was sold. For it does not decide that separate *proceedings* for partition must be commenced in each district or county where the lands of which partition is sought lie in several different districts or counties, but only that, in such cases, "several writs must issue," just as was done in the original case for partition.

The view contended for by the appellants would lead necessarily to the result that where a person died intestate, leaving real estate in several different counties, it would be necessary, for the purpose of partitioning his estate, to institute actions in each of such counties. Such a construction of the act, involving, as it would, unnecessary expense and likely to produce confusion, we would not be disposed to adopt, unless required so to do by the express terms of the statute, but, on the contrary, we prefer what seems to have been the construction adopted by the distinguished Chancellor under whose order the writs of partition were issued.

Next, it is insisted that the act of 1791 only purports to give a lien where land is sold under proceedings for the partition of an intestate's estate; so that where a sale is *ordered* for partition of lands held by tenants in common, under a deed or otherwise than as heirs of an intestate, the provision for the lien does not apply; and as the proceedings under which the sale in question was made were not for partition of lands of an intestate alone, but also for the partition of those lands embraced in the deed above referred to, the statutory lien did not attach. It might be a sufficient answer to this to say that the decree under which the sale was made treated all the lands as if they were lands of the intestate, and no exception thereto was taken by any of the parties, and they, as well as the appellants, who claim under them, are excluded from now raising the question. But a still more conclusive answer is, that however it may be as to the lands covered by said deeds, no such position could be maintained, so far as the lands in Sumter are concerned, as they are not embraced in either of the deeds, and were undoubtedly a portion of

the intestate's estate, and must, therefore, when sold for partition, have been bound by the statutory lien to secure the payment of the purchase money.

Again, it is argued that the requirement in the order of sale that the purchaser should give bond, with sufficient sureties, rebuts the presumption that any statutory lien was contemplated in this case, and shows that it was not the intention of the decree to rely upon any such security. When it is remembered that at the time this sale was made and up to the commencement of the recent war, it was the very general, if not universal practice, to require purchasers at judicial sales of real estate to give good and sufficient personal security, as well as a mortgage of the premises, it will be seen that such a presumption would have but little to support it. But what is more important, this argument proceeds upon the erroneous idea that a statutory lien is the creature of the court, whereas, in fact, it owes its origin solely to the provisions of the statute, and the courts could not, if they would, dispense with such a statutory provision any more than they could with the most solemn act of the legislature. *Messervey* v. *Barelli*, 2 *Hill Ch.* 575.

The next question raised by the exception is as to the effect of the repeal of that feature of the act of 1791, which provides for a statutory lien upon sale for partition. *Gen. Stat.* 801. The position taken by the appellants upon this question, that this provision of the act of 1791 having been repealed prior to the commencement of this action, the plaintiff is prevented from setting up the lien in this case, besides being in conflict with the general principles which govern in the construction of statutes, as laid down in *Potter Dwar's. on Stat.* 155–57, *Pacific Mail Steamship Co.* v. *Joliffe*, 2 *Wall.* 450, is likewise in conflict with the express provisions of Section 4, Chapter CXLVI., (*Gen. Stat.* 766), where, in speaking of the effect of the repeal of the several acts mentioned therein, this language is used : " It shall not affect any act done or right accruing, accrued or established * * * before the repeal takes effect."

Now, certainly the statutory lien claimed in this case was a right which had accrued long before the repeal took effect, and, therefore, by the express terms of the general statutes, to say

nothing of the general rule of construction, such right cannot be affected by such repeal.

The next position taken by appellants is, that after the expiration of ten years from the day of sale, or at least from the maturity of the bond, the action could not be maintained. If by this is meant that payment is to be presumed after the lapse of such a time, it certainly cannot be maintained ; but if the meaning is, as we presume from the argument of the appellant's counsel it is, that Moses having had possession for more than ten years before the lot in question was sold by the sheriff and bought by Ryttenberg, his title could be referred to such possession rather than to his deed from the commissioner in equity, the position is still without any foundation.

It must be remembered that in order to constitute title by possession it must be shown to be an *adverse* possession, and so far as we can discover, there is no evidence whatever upon that point. But, in addition to this, Moses, as we have seen, undoubtedly went into possession as a mortgagor, for, in this respect, a statutory lien does not differ from an ordinary mortgage, and no length of possession, as such, without proof of something more, will be a bar to an action to foreclose such lien. *Norton* v. *Lewis*, 3 *S. C.* 25, recognizing and affirming *Wright* v. *Eaves*, 10 *Rich. Eq.* 582.

The next exception is based upon the proposition, which we do not think well founded, that Ryttenberg had no notice of the statutory lien, and, therefore, when he purchased he took his title free from such encumbrance, and those who hold under him hold with like exemption. If a party has such notice as will be sufficient to put him on inquiry, that is enough. 1 *Story Eq. Jur.* 399, 400, *and notes*. That Ryttenberg had such notice, there can be no doubt. The recitals in the deed from the commissioner in equity to Moses, which, though not before us, must be presumed to be in the usual form, were sufficient to indicate to him that Moses derived his title from a judicial sale made for partition, and the law then informed him that at such a sale the land stood pledged for the payment of the purchase money. The most ordinary prudence, therefore, should have dictated to him the propriety of examining the record of the case under which such

sale was made, in order to ascertain whether such encumbrance had been removed. If he had done this he would have discovered that the bond had not been paid, but was still outstanding, as the proper place for the bond was in the office where such record was kept, and in the absence of any evidence to the contrary, we are bound to assume that it was there until it was taken out for the purpose of bringing an action upon it, and even then, if the officer who had charge of it did his duty, which, of course, is to be assumed, there would still be evidence that the bond was not paid. If he bought without making such inquiry, and upon the mistaken belief that the bond was paid, he having the means of correcting such mistake by an examination of the records of the case, he must take the consequences. In fact, we do not see how the purchaser of property, covered by a statutory lien, of which he has no express notice, can stand in any better position than the purchaser of property covered by a formal mortgage, duly recorded, of which he has no express notice. In the former case no recording is required, the proceedings under which it arises being regarded, doubtless, as a substitute for such recording, and which, therefore, operate as notice, just as the formal recording does in the latter.

The next exception is in these words: " Because his Honor held that without notice the land of defendant, Ryttenberg, was liable to the demand of the plaintiff." If this exception was designed to represent the Circuit judge as holding that *express* notice was not necessary, then, as we have seen, there was no error; but if the purpose of it is to assail the decision on the ground that it was held therein that Ryttenberg's land would be liable, even though, at the time of his purchase, he had *no* notice of the lien of any kind, either *express* or such as would be implied, from the recitals in the deed to Moses and the records of the office in which the proceedings for partition were instituted, then the exception has been taken in entire misapprehension of the Circuit decree, as no such doctrine is announced therein.

The last ground taken by the appellants is that the penalty of the bond was larger than it should have been, and that the Circuit judge erred in decreeing for the amount of the penalty, as stated in the bond. This exception is based upon the idea that

the penalty of a bond for the payment of money must necessarily be exactly double the sum, the payment of which it is intended to secure. Now, while it may be and doubtless is the usual practice to fix the penalty of a money bond at double the amount of the condition, yet we know of no authority requiring this as matter of law, and none such has been cited. We do not see why a person may not bind himself in a penalty of any amount he pleases to pay a certain specified sum of money. Moses undoubtedly knew, or ought to have known at the time he signed the bond, the amount of the penalty named therein, and that it was more than double the sum of money which it was intended to secure, and if he assented to it then, as he did by signing the bond, he cannot now, nor can any one else, ask a court to change the terms of the contract which he then deliberately entered into.

The judgment of the Circuit Court is affirmed.

Judgment affirmed.

WILLARD, C. J., and HASKELL, A. J., concurred.